UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 15-cv-62324-GAYLES

QUINTON L. McGIRT,
        Plaintiff,

v.

BROWARD COLLEGE; LINDA A. WOOD,
*individually and in her official capacity*;
CITY OF CORAL SPRINGS; and
ANTHONY PUSTIZZI, *individually and
in his official capacity*,
        Defendants.
_____/

## ORDER

**THIS CAUSE** comes before the Court on two motions: Defendant District Board of Trustees of Broward College, Florida's ("Broward College")[1] Motion to Dismiss Counts II and VI of Plaintiff's Amended Complaint [ECF No. 38] and Defendant City of Coral Springs' (the "City") Motion to Dismiss Counts III and VII [ECF No. 42]. The Court has carefully considered the Amended Complaint, the parties' briefs, and the applicable law, and is otherwise fully advised in the premises. For the reasons that follow, Broward College's motion shall be granted in part and denied in part, and the City's motion shall be denied.

### I.    BACKGROUND

This is the Court's second review of Plaintiff Quinton L. McGirt's allegations in this litigation. *See McGirt v. Broward Coll.*, No. 15-62324, 2016 WL 1161093 (S.D. Fla. Mar. 23, 2016). McGirt alleges several claims against the Defendants arising from his expulsion from the police academy operated by Broward College and from the subsequent termination of his employment

---

[1] "Broward College," named in the Complaint as a Defendant, is not a proper party to this suit. The District Board of Trustees of Broward College, Florida is the governing entity with the power to sue or be sued. *See McGirt v. Broward Coll.*, No. 15-62324, 2016 WL 1161093, at *1 n.1 (S.D. Fla. Mar. 23, 2016).

1

with the City of Coral Springs Police Department.

### A.      *Factual Allegations*

According to the allegations in the Amended Complaint, McGirt, a thirty-two-year-old African American man, was employed during the relevant time period by the City of Coral Springs Police Department (the "Police Department"). McGirt has a Bachelor's Degree in Criminal Justice from Florida Atlantic University, and he has resided in Coral Springs, Florida, for eighteen years. Am. Compl. ¶ 3. During his employment with the Police Department as a Traffic Accident Investigator/Police Service Aid from January 2012 to December 2013, he received numerous awards and commendations, as well as positive performance reviews. *Id.* ¶¶ 8-9. In December 2013, the Police Department promoted McGirt to Law Enforcement Trainee and sponsored him to begin training to become a police officer. *Id.* ¶ 12.

In January 2014, McGirt matriculated at the Institute of Public Safety (the "Police Academy") operated by Defendant Broward College. *Id.* ¶ 13. Over the following months, three separate "incidents" occurred, which together culminated in McGirt's expulsion from the Police Academy and the termination of his employment with the City. *See id.* ¶¶ 15, 17-20. First, when an instructor was addressing the class regarding the potential liability of overweight police officers, McGirt uttered the name of a physically fit cadet in the class as a joke. *Id.* ¶ 15. The instructor reprimanded McGirt for being "disruptive." *Id.* He also told McGirt that he had received a phone call from the City during which someone told him that McGirt "did not belong in the Police Academy." *Id.* Second, during a physical training session, another cadet, Jordan Futch, aggressively confronted McGirt, but McGirt did not respond. *Id.* ¶ 17. Futch later admitted to initiating that incident. *Id.* Third, McGirt was accused of disrupting the class by making a comment during a break that two female cadets perceived to be sexual in nature. *Id.* ¶ 18. After he made this comment, another cadet, Nieves, made a gesture simulating an oral sex act. *Id.* McGirt, rather than Nieves, was accused of

2

making the sexual hand gesture. *Id.* ¶ 20. Following this incident, Defendant Linda Wood, the Dean of Broward College, recommended that McGirt be removed from the Police Academy. *Id.*

On March 28, 2014, Defendant Anthony Pustizzi, the City's Chief of Police, recommended to the City that McGirt's employment with the Police Department be terminated based on his removal from the Police Academy. *Id.* ¶ 21. The City placed McGirt on leave with pay pending further notice, and Wood ultimately expelled him from the Police Academy. *Id.* ¶ 22. While McGirt was on leave, City police officers took statements of several cadets who identified Nieves as the person who made the sexual gesture. *Id.* ¶ 23. Nieves, after hearing of the accusation against McGirt for his own action, admitted to making the gesture. *Id.* ¶ 25. Nieves remained in the Police Academy, receiving only a written reprimand, and even then only after graduating from the Academy. *Id.*

On April 4, 2014, the City sent McGirt a termination letter based on the recommendations of Pustizzi and Wood. *Id.* ¶ 32. The letter also indicated that McGirt was entitled to a pre-termination informal hearing, which McGirt elected to convene. *Id.* That informal hearing took place ten days later at the office of the City Manager; the decision to terminate was upheld. *Id.* ¶ 33. On August 29, 2014, at a formal hearing regarding McGirt's termination, a hearing officer also upheld the decision to terminate. *Id.* ¶ 42; *see also* Am. Compl. Ex. G.

Prior to that formal hearing, on April 17, 2014, McGirt, through counsel, made a written public records request of Broward College, seeking to inspect and copy several records pertaining to his tenure at the Police Academy. Am. Compl. ¶ 41; *see also* Am. Compl. Ex. F. In response to this request, Broward College produced seventy-eight pages of documents. Am. Compl. ¶ 41. Two months later, McGirt, again through counsel, made a written public records request of the City, seeking, *inter alia*, Nieves's disciplinary records. *Id.* ¶ 39; *see also* Compl. Ex. D. The City responded to the request, but its response did not include Nieves's disciplinary records or audiotapes

3

of witness statements. Am. Compl. ¶ 39. McGirt also discovered that the City had produced documents that were responsive to his request of Broward College but which Broward College itself did not produce. *Id.*

After his termination was upheld at the formal hearing, McGirt filed a charge of racial discrimination with the Equal Employment Opportunity Commission ("EEOC") against the City and Broward College. *Id.* ¶ 47. On August 14, 2015, the EEOC issued McGirt right-to-sue letters for both the City and Broward College. *Id.* ¶ 48; *see also* Am. Compl. Ex. H.

B.   *Procedural History*

McGirt filed a Complaint in this Court on November 3, 2015 [ECF No. 1]. In it, he asserted seven claims: race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, against the City (Count I) and Broward College (Count II); due process and equal protection violations against the City and Pustizzi (Count III); conspiracy to commit due process and equal protection violations against Wood and Pustizzi (Count IV); violations of Florida's Public Records Act, Fla. Stat. § 119.01 *et seq.*, against the City (Count V) and Broward College (Count VI); and defamation against the City (Count VII). He sought declaratory and injunctive relief in several forms against various Defendants, as well as compensatory and punitive damages against all Defendants.

Broward College and Dean Wood filed a motion to dismiss on November 25, 2015 [ECF No. 10], and the City and Pustizzi filed a motion to dismiss on December 15, 2015 [ECF No. 20]. On March 23, 2016, this Court granted the Defendants' motions in part on several grounds [ECF No. 30]. McGirt agreed that the Defendants' motions to dismiss should be granted as to Counts II, III, IV, and VII, as he admittedly failed to allege sufficient facts to state a claim. Within that same opposition brief that he admitted his claims were deficient, he requested leave to amend to sufficiently state his claims. But because McGirt did not file a motion for leave to amend, and

4

because "his request for leave to amend [was] secondary to his responses in opposition, he ha[d] not attached a copy of the proposed amendment, and he ha[d] not *sufficiently* set forth the substance of his amendment," the Court denied his request and dismissed these claims without prejudice. *McGirt*, 2016 WL 1161093, at *3. The Court granted the City's and Broward College's motions to dismiss the Florida Public Records Act claims in Counts V and VI, respectively, and denied the City's motion to dismiss the Title VII claim in Count I. *See id.* at *4-5.

On April 5, 2016, McGirt filed an unopposed motion for leave to amend his Complaint, with the proposed amended complaint attached [ECF No. 35], and the Court granted him that leave on April 7th [ECF No. 36]. McGirt filed his Amended Complaint on May 3rd [ECF No. 37], which, notably, included a new Count II alleging a Title VI claim against Broward College—replacing the dismissed Title VII claim.

Broward College filed a motion to dismiss on May 6th [ECF No. 38]. It seeks dismissal of the new Title VI claim (Count II) and the Florida Public Records Act claim (Count VI). The City filed its motion to dismiss on May 24th [ECF No. 42]. It seeks dismissal of the municipal liability claim (Count III) and the defamation claim (Count VII).

## II.    LEGAL STANDARD

To survive a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" meaning that it must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a court must accept well-pleaded factual allegations as true, "conclusory allegations . . . are not entitled to an assumption of truth—legal conclusions must be supported by factual allegations." *Randall v. Scott*, 610 F.3d 701, 709-10 (11th Cir. 2010). "[T]he pleadings are con-

strued broadly," *Levine v. World Fin. Network Nat'l Bank*, 437 F.3d 1118, 1120 (11th Cir. 2006), and the allegations in the complaint are viewed in the light most favorable to the plaintiff, *Bishop v. Ross Earle & Bonan, P.A.*, 817 F.3d 1268, 1270 (11th Cir. 2016). At bottom, the question is not whether the claimant "will ultimately prevail . . . but whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011).

### III.   DISCUSSION

#### A.   *Consent to Dismissal of Count II and Request for Leave to Amend*

At the outset, the Court finds itself in familiar territory, with McGirt once again agreeing that a motion to dismiss should be granted—in this instance, Broward College's motion to dismiss the Title VI claim—because he recognizes that he has failed to allege sufficient facts to state a plausible claim. But again, instead of filing a motion for leave to file an amended complaint, he consents to dismissal in his opposition while simultaneously requesting leave to amend his complaint. McGirt attempts to cloud the issue by criticizing Broward College's "quilt work of elements that are allegedly required in order to state a valid Title VI claim," Pl.'s Broward College Opp'n at 3, yet on the same page of this brief, McGirt concedes the three elements required to state a valid Title VI claim,[2] *and concedes that he has not alleged two of those three elements*.

In requesting leave to amend his *previous* complaint in order to bring a claim against Broward College under Title VI, McGirt wrote: "Plaintiff has a viable claim against [Broward College] under Title VI of the Civil Rights Act ('Title VI'), which prohibits federally funded programs, such as [Broward College], from discriminating on the basis of race or national origin." [ECF No. 24 at 3]. But, five months after making that assertion, he has failed to even allege facts

---

[2]   Those elements being (1) that the defendant received federal funds; (2) that the plaintiff was denied participation in a federally funded program, or that any such denial was based on the plaintiff's race, color, or national origin; and (3) that the plaintiff is "the intended beneficiary of, an applicant for, or a participant in a federally funded program." *Azteca Enters., Inc. v. Dallas Area Rapid Transit*, 31 F. App'x 893 (5th Cir. 2002); *see also Mack v. City of High Springs*, 468 F. App'x 3 (11th Cir. 2012).

to support a mere prima facie case. In denying McGirt's request, this Court stated:

> If McGirt is so willing to agree with the Defendants that several of his claims are deficient as currently pled, the Court questions why he did not immediately file an amended complaint to correct these deficiencies (as he would have been permitted to do under [Fed. R. Civ. P.] 15(a)(1)) rather than filing opposition briefs containing these requests, which led to the Defendants expending time and resources to draft and file reply briefs, and which ultimately leads to the Court expending its own time and resources to rule on motions that he agrees, in large part, should be granted.

*McGirt*, 2016 WL 1161093, at *3. Nothing has changed between that instance and this one. McGirt has filed another complaint, a defendant has moved to dismiss a claim, and McGirt has agreed that the motion should be granted and requests leave to amend.

The purpose of a motion to dismiss is to test the facial sufficiency of a complaint, not to teach a plaintiff how to draft one. McGirt should not be relying on the Defendants to instruct him as to the requirements of a claim so that he can then use those instructions as an avenue to seek leave. The Court may have been more charitable in granting McGirt's later-filed motion for leave to file his *first* amended complaint, but McGirt's (and his counsel's) actions since then have bordered on dilatory. In the overwhelming majority of cases, a plaintiff whose unopposed motion for leave to amend (that he filed with the proposed amended complaint attached) is granted will almost instantly file that amended complaint. But McGirt did not file his Amended Complaint until four weeks after the Court granted his motion. And now that Broward College has moved to dismiss that Amended Complaint, McGirt again asks the Court to grant him leave to amend his complaint within his opposition to Broward College's motion to dismiss.

"The Eleventh Circuit has held that a district court acts well within its authority if it dismisses *with prejudice* [claims] in a case where, as here, 'the plaintiff fail[s] to attach the proposed amendment or set forth the substance of the proposed amendment' but rather includes the request for leave to amend in a memorandum filed in opposition to the defendant's motion to dismiss the

7

complaint." *Tepper-Barak v. JM Auto, Inc.*, No. 16-61876, 2016 WL 6082358, at *3 (S.D. Fla. Oct. 18, 2016) (quoting *United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1362 (11th Cir. 2006)). Discovery in this case is closed and the trial date (currently set for April 2017) draws ever closer. With that in mind, the Court will not squander its limited time and resources on a third iteration of the complaint, (presumably) a third round of Rule 12(b)(6) motion practice, and (potentially) a third request for leave to amend based on that motion practice. Accordingly, Broward College's motion to dismiss Count II is granted, and the claim is dismissed with prejudice.

    **B.**    *Municipal Liability Claim Against the City (Count III)*

A city's liability under Section 1983 may not be based on the doctrine of respondeat superior. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Instead, a city is liable "only for acts for which the [city] is actually responsible" and only when the city's "official policy" causes a constitutional violation. *Marsh v. Butler County*, 268 F.3d 1014, 1027 (11th Cir. 2001) (en banc); *see also Monell*, 436 U.S. at 694. To state a Section 1983 claim against a municipal entity, a plaintiff must "identify a municipal 'policy' or 'custom' that caused [his] injury." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998) (citations and internal quotation marks omitted). McGirt, therefore, has two methods by which to establish the City's policy: "identify either (1) an officially promulgated [City] policy or (2) an unofficial custom or practice of the [City] shown through the repeated acts of a final policy maker for the [City]." *Grech v. Clayton County*, 335 F.3d 1326, 1329 (11th Cir. 2003). Because a city rarely will have an officially adopted policy of permitting a particular constitutional violation, most plaintiffs—McGirt included—must show that the City has a custom or practice of permitting the constitutional violation and that the City's custom or practice is "the moving force [behind] the constitutional violation." *Id.* at 1330 (citations and internal quotation marks omitted).

### 1. Policy

McGirt argues that he has sufficiently alleged the existence of an unconstitutional policy because he has included Pustizzi, the City's Chief of Police, as a Defendant in this action. "[A] municipal official who has 'final policymaking authority' in a certain area of the city's business may by his or her action subject the government to § 1983 liability when the challenged action falls within that authority." *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1480 (11th Cir. 1991). McGirt alleges that Pustizzi received several emails from other cadets identifying Nieves as the person who made the inappropriate hand gesture, not McGirt, but Pustizzi still proceeded to recommend that the City terminate McGirt's employment. He argues that because Pustizzi, as Chief of Police, has "final policymaking authority" for the City, his actions implicate the City under Section 1983.

McGirt is incorrect. As the City notes, "[f]inal policymaking authority over a particular subject area does not vest in an official whose decisions in the area are subject to meaningful administrative review." *Scala v. City of Winter Park*, 116 F.3d 1396, 1401 (11th Cir. 1997). Pustizzi did not have "final policymaking authority" when it came to McGirt's employment because, as McGirt alleged, he merely ***recommended*** McGirt's termination. *See* Am. Compl. ¶ 32. Wood recommended McGirt's termination, as well; the City sent a termination letter based on those recommendations and indicated that McGirt was entitled to a pre-termination informal hearing. That hearing took place at the office of the City Manager during which the decision to terminate him was upheld. The decision to terminate was further reviewed (and again upheld) at a formal hearing four months later.

When a municipal officer's decision is "subject to meaningful administrative review" and a superior "has the authority to veto [a] recommendation" made by that municipal officer, the municipal officer "[i]s not a final policymaker that can subject the entity to § 1983 municipal liability." *Doe v. Sch. Bd.*, 604 F.3d 1248, 1265 (11th Cir. 2010). Pustizzi's "authority to make a mere

recommendation to a superior, which that superior is free to accept or reject, does not equate to the final authority to make [City] policy." *Id.* Therefore, the City may not be subjected to municipal liability under Section 1983 based on the single act by Pustizzi of recommending McGirt's termination.

### 2.  Custom

"To prove Section 1983 liability based on custom, a plaintiff must establish a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a custom or usage with the force of law.'" *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)) (citation and internal quotation marks omitted). But "[t]he mere mention of policy, practice, or custom is not enough, for a plaintiff must do something more than simply allege that such an official policy [or custom] exists." *Andrade v. Miami Dade County*, No. 09-23220, 2011 WL 4345665, at *8 (S.D. Fla. Sept. 16, 2011). McGirt's allegations do not rise to this level, as they focus only on his individual circumstances rather than describing a widespread practice on the City's part.

That said, the Court does find that McGirt has stated a claim for municipal liability based on a ratification theory. Under this theory, the City, "by actively endorsing or approving the conduct of its employees or officials, may be held responsible for it." *Garvie v. City of Fort Walton Beach*, 366 F.3d 1186, 1189 (11th Cir. 2004) (citation and internal quotation marks omitted). For a plaintiff to state a Section 1983 claim against the City based on this theory, he "must demonstrate that local government policymakers had an opportunity to review the subordinate's decision and agreed with both the decision and the decision's basis." *Id.* (citation and internal quotation marks omitted). According to the Amended Complaint, the City's Administrative Policy defines and provides examples of "misconduct," "serious misconduct," and "extreme/unlawful misconduct."

Am. Compl. ¶ 67. The City's stated reason for terminating McGirt's employment was that he "engaged in repeated serious misconduct," but, taking McGirt's allegations as true, he did not commit serious misconduct as defined by the Administrative Policy. The City also did not provide McGirt with notice of his alleged misconduct, nor did it impose progressive discipline, also as required by the Administrative Policy. McGirt further contends that the hearings at which his termination was upheld were not provided in a "meaningful manner": the pre-termination hearing was held weeks before the City concluded its investigation into the incidents; and the opinion of the hearing officer following the post-termination hearing did not discuss the issues presented, the witnesses' testimony, or the reasons supplied to support termination. *Id.* ¶ 68.

The Court can reasonably infer, based on the allegations presented, that a final policy-maker for the City had an opportunity to review the decision to terminate McGirt's employment and agreed with the decision and its basis sufficiently to withstand the City's motion on this ground. Accordingly, the City's motion to dismiss Count III is denied.

### C.   *Public Records Act Claim Against Broward College (Count VI)*

In the Amended Complaint, McGirt identifies four documents that the City produced in response to his public records request that Broward College did not produce. *See* Am. Compl. ¶ 89; *see also id.* Ex. I. He alleges that this results in a violation of the Florida Public Records Act and that Broward College's failure to comply with the Act "subjects [Broward College] to penalties set forth under Fla. Stat. § 119.10," and entitles him to costs and attorneys' fees under Fla. Stat. § 119.12.

As this Court previously explained:

> Florida's Public Records Act provides that "[i]t is the policy of [the State of Florida] that all state, county, and municipal records are open for personal inspection and copying by any person. Providing access to public records is the duty of each agency." Fla. Stat. § 119.01. The Act further provides that "[i]f a civil action is filed against an agency to enforce the provisions of this chapter and if the court

11

> determines that such agency unlawfully refused to permit a public record to be inspected or copied, the court shall assess and award, against the agency responsible, the reasonable costs of enforcement including reasonable attorney's fees." *Id.* § 119.12.

*McGirt*, 2016 WL 1161093, at *4. Upon consideration, the Court finds that McGirt's factual allegations are sufficient to survive a motion to dismiss. Broward College's arguments on this issue (both on substantive and subject-matter jurisdiction grounds) would be more appropriately addressed at summary judgment with the benefit of a fully developed record. Accordingly, Broward College's motion to dismiss Count VI is denied.

### D.  *Defamation Claim Against the City (Count VII)*

Finally, McGirt's defamation claim against the City arises from the allegation that the City prevented him from obtaining employment for which he was qualified at five different law enforcement agencies because he was "terminated due to serious misconduct related to work." Am. Compl. ¶¶ 95-97. And in one specific instance, McGirt alleges that the City "affirmatively spoke unkind things" about him to the human resources department at the Palm Beach Regional Juvenile Detention Center and refused to provide backup documentation of McGirt's alleged negative employment history. *Id.* ¶ 98.

On this issue, the Court finds instructive the decision of a court in the Middle District of Florida in *Shober v. Town of Ft. Myers Beach*, which also involved a defamation claim brought against a Florida municipality:

> In Florida, "executive officials of government are absolutely privileged as to defamatory publications made in connection with the performance of the duties and responsibilities of their office[.]" *McNayr v. Kelly*, 184 So. 2d 428, 433 (Fla. 1966). The privilege attaches to all statements "however false or malicious or badly motivated the statement may be." *Hauser v. Urchisin*, 231 So. 2d 6, 8 (Fla. 1970). Pertinent here, "[i]f a city official has absolute immunity against claims for defamation, then the city cannot be liable for defamation where the liability against the City is premised on respondeat superior." *Medina v. City of Hialeah*, No. 02-20957, 2003 WL 1562281, at *2 (S.D. Fla. Mar. 24, 2003) (citation omitted); *see also Murphy v. City of Aventura*, No. 08-20603, 2008 WL 4540055, at *5 n.3 (S.D. Fla.

12

> Oct. 10, 2008) (stating the city would not be liable for defamation if the defendant city manager was found to possess absolute immunity (citation omitted)); *Saxon v. Knowles*, 185 So. 2d 194, 196 (Fla. 4th DCA 1966) ("The alleged liability of the city is based solely on the doctrine of respondeat superior. Exoneration of the city manager necessarily requires the exoneration of his employer, the City of Sanford." (citation omitted)).
>
> Defendant declares, without explanation, that it enjoys an absolute privilege to the defamation claim under the above principles. (Doc. # 25 at 5). Defendant, however, overlooks the basic principle that *executive officials* enjoy the absolute privilege. *See e.g., City of Miami v. Wardlow*, 403 So. 2d 414, 416 (Fla. 1981) (finding that a police officer enjoyed an absolute privilege in making slanderous statements about plaintiff to a police captain in another city); *Densmore v. City of Boca Raton*, 368 So. 2d 945, 948 (Fla. 4th DCA 1979) (finding a city manager enjoyed an absolute privilege in disclosing his reasons for discharging the plaintiff). This oversight is important because Plaintiff sues only Defendant, a municipal corporation, rather than an executive official. As it stands, Defendant's absolute privilege hinges on whether the executive official who allegedly defamed Plaintiff acted within the orbit of his employment duties and responsibilities. Defendant offers no argument on this point, and the Court declines to devise arguments on its behalf.

No. 13-0857, 2014 WL 6469881, at *6-7 (M.D. Fla. Nov. 17, 2014) (citations altered). Here, as well, the City has declared, without explanation, that it enjoys an absolute privilege to McGirt's defamation claim.[3] Given the similarity of circumstances, the Court agrees with the reasoning of the *Shober* court in finding that the City's argument regarding absolute privilege fails. The Court does not find dispositive that the plaintiff in *Shober* sued no executive officials while McGirt has named Pustizzi as a defendant; McGirt's defamation claim does not arise from statements made by Pustizzi, but rather by other unnamed City employees. If, on summary judgment, the City can show that the executive official or officials who McGirt identifies as having defamed him "acted within the orbit of [his/her/their] employment duties and responsibilities," *id.* at *7, then the City may have a stronger argument in favor of a finding of absolute immunity. At this juncture, however, it does not persuade. Accordingly, the City's motion to dismiss Count VII is denied.

---

[3] Indeed, the City's affirmative argument in its motion totals two sentences in length: "Under Florida law, Coral Springs is absolutely immune from liability for defamation. [citing cases] Count VII must be dismissed." City Mot. at 3-4.

## IV. CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED** as follows:

(1) Defendant District Board of Trustees of Broward College, Florida's Motion to Dismiss [ECF No. 38] is **GRANTED IN PART**. Count II of the Amended Complaint [ECF No. 35] is **DISMISSED WITH PREJUDICE**. The motion to dismiss is otherwise **DENIED**; and

(2) Defendant City of Coral Springs' Motion to Dismiss [ECF No. 42] is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 21st day of October, 2016.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE