UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 15-cv-62324-GAYLES

QUINTON L. McGIRT,
        Plaintiff,

       v.

BROWARD COLLEGE; LINDA A. WOOD,
*individually and in her official capacity*;
CITY OF CORAL SPRINGS; and
ANTHONY PUSTIZZI, *individually and
in his official capacity*,
        Defendants.
                                             /

## ORDER

**THIS CAUSE** comes before the Court on the Defendants City of Coral Springs (the "City") and Anthony Pustizzi's Joint Motion for Summary Judgment [ECF No. 81]. The Court has carefully considered the parties' briefs, the exhibits attached thereto, and the applicable law and is otherwise fully advised in the premises. For the reasons that follow, the motion shall be granted.

**I.    BACKGROUND**

    **A.**    *Factual History*

Plaintiff Quinton McGirt, a thirty-two-year-old African-American man, was employed during the relevant time period by the City of Coral Springs Police Department (the "Police Department"). In early 2012, McGirt was hired by the Police Department for the position of Traffic Accident Investigator/Police Service Aid ("PSA"), a civilian position whose duties include providing ancillary support to the police officers at the scenes of motor vehicle accidents. Defs.' Statement of Undisputed Material Facts [ECF No. 82] ("Defs.' Statement") ¶ 3. After McGirt submitted several unsuccessful applications to become a law enforcement trainee/police cadet,

1

Defendant Anthony Pustizzi, the City's Chief of Police, ultimately promoted McGirt to the position in December 2013. *Id.* ¶ 8. Pursuant to City administrative policy, after his promotion, McGirt became a positional probationary City employee subject to a one-year probationary period during which time he could be terminated with or without cause. *Id.* ¶ 9.

The City sponsors and pays for its cadets to attend the police academy, so McGirt attended Police Academy Class #291 at Broward College (the "Academy"). *Id.* ¶¶ 1, 10. But shortly after McGirt began, the City began to hear negative feedback about McGirt from the Academy. *Id.* ¶ 11. First, a class supervisor removed McGirt from class for being disrespectful. *Id.* Second, McGirt was involved in a near-altercation with another cadet during a physical training session. *Id.* ¶ 18. Finally, McGirt was accused of disrupting the class by making a comment during a break that two female cadets perceived to be sexual in nature. More specifically, a detective gave Class #291 a presentation on gangs and informed the class that he had appeared on an episode of the television series *Gangland*. *Id.* ¶ 22. A female cadet stated something along the lines of "Wow Sir. You really have done everything," after which McGirt immediately started singing "five dollar foot long" (from commercial advertisements for Subway restaurant), which the two female cadets took as sexual innuendo. *Id.* ¶ 23. At the same time, another cadet, Elliott Nieves, was observed by classmates making an inappropriate hand gesture perceived to be of a sexual nature. *Id.* ¶ 25.

Chief Pustizzi directed Captain Chris Depalma and Sergeant David Kirkland to respond to the complaints about McGirt's behavior at the Academy. *Id.* ¶ 18. Depalma and Kirkland interviewed McGirt about the allegations arising out of the third incident. McGirt denied any wrongdoing and claimed that the phrase "five-dollar foot long" referred to someone "kissing up" to or flirting with another person, as in kissing up to the sandwich preparer at Subway to get a free sandwich. *Id.* ¶ 29. At the conclusion of the investigation, the City determined that the "five-dollar foot long" statement did not constitute a violation of the City's express sexual harassment policy, but

it ultimately determined that McGirt's overall behavior amounted to unbecoming misconduct and improper demeanor in violation of the City's Administrative Police and the Police Department's Rules and Regulations. *Id.* ¶ 30.

Chief Pustizzi recommended that McGirt's employment with the City be terminated. *Id.* ¶ 31. The City's Director of Human Resources, Dale Pazdra, reviewed Chief Pustizzi's recommendation with the City Attorney and fully concurred in the decision. *Id.* Pazdra issued correspondence to McGirt advising him that he was being recommended for termination and that he had a right to an informal pre-determination hearing before City Manager Erdal Donmez, the official who makes the final decision with respect to the termination of all City employees, including police officers. *Id.*

McGirt exercised his right to this hearing, and he appeared (represented by counsel) on April 14, 2014. *Id.* ¶ 32. McGirt and his counsel presented argument and evidence in opposition to the proposed termination. *Id.* One month after the hearing, and two weeks after the completion of the investigation, Donmez terminated McGirt's employment, effective May 15, 2014.[1] *Id.* ¶ 33. In his correspondence to McGirt, Donmez explained the basis (in part) for his decision:

- On February 18, 2014, you were told to leave class by Deputy Hunt for being disruptive. The email from Deputy Hunt stated "I threw him out and told him that if he disrespects me or another instructor again, I am sending him back to the PD and he will not be welcome until the Chief requests it". The following day Sergeant Kozlowski and Officer King met with you in person to discuss the email that was received. Similar to the conversation Sergeant Kozlowski had with you prior to entering the Academy, he explained again the type of appropriate behavior that was expected of you and that he would advocate for termination of your employment for continued inappropriate behavior. This counseling was documented in a memo to file dated February 19, 2014.

- On March 28, 2014, Sergeant Kozlowski received a phone call that on March 27, 2014, you were being disruptive in class again by counting out of sequence during a Physical Training session which frustrated another cadet at the Academy. Based upon the City's Investigation, it was deter-

---

[1]   McGirt was on paid administrative leave from March 31, 2014, through May 15, 2014. Defs.' Statement ¶ 34.

> mined you provoked another Cadet to such an extent that it nearly resulted in a physical altercation.
>
> - Before arrival at the Police Academy to discuss the March 27, 2014 incident with you, Sergeant Kozlowski received another phone call on March 28, 2014. Sergeant Kozlowski was informed that you disrupted class by making the comment "five dollar foot long." Other Cadets perceived this comment as being sexual in nature, making them feel uncomfortable and embarrassed. You claim, however, that this phrase refers to someone "kissing up" to or "flirting" with another person. Regardless of the meaning of your comment, the comment disrupted class and was inappropriate.
>
> In addition to the incidents summarized above; I have reviewed the complete Investigation Report (#14-01). The report contains statements from Academy Instructors, Deans, and other cadets. The report illustrates in detail that during the three months you attended the Academy you exhibited an ongoing pattern of inappropriate behavior, poor decision making, and a general unwillingness to adhere to Academy conduct standards. Your inappropriate behavior was so severe that your actions were characterized as "bullying" by other cadets.
>
> The expectations for your conduct and appropriate behavior while attending the Academy were clearly communicated by both Sergeant Kozlowski of the Coral Springs Police Training Unit and Academy Instructors. Yet you disregarded those instructions, resulting in your removal from the program. . . .
>
> Based on the severity of your conduct as a whole at the Academy and in addition to the specific instances of conduct cited in this letter, whether deemed serious misconduct or extreme conduct, termination is warranted pursuant to City policy. . . .

Letter from Erdal Donmez, City Mgr., City of Coral Springs, Fla., to Quinton McGirt (May 15, 2014) [ECF No. 83-21 at 211-12].[2]

McGirt exercised his right to a formal post-termination arbitration, which was held on August 29, 2014, before Hearing Officer Jack Martin Coe. Defs.' Statement ¶ 35. McGirt, again represented by counsel, testified, called his own witnesses, and cross-examined the City's witnesses. *Id.* On September 10, 2014, Coe issued an opinion in favor of the City upholding McGirt's termination. *Id.* ¶ 35.

### B.   *Procedural History*

Following the arbitration, McGirt filed a charge of racial discrimination with the Equal Employment Opportunity Commission ("EEOC") against the City and Broward College. Am.

---

[2]   Although McGirt does not dispute that Donmez wrote this letter, he disputes the facts underlying Donmez's decision.

4

Compl. ¶ 47. On August 14, 2015, the EEOC issued McGirt right-to-sue letters for both the City and Broward College. *Id.* ¶ 48; *see also* Am. Compl. Ex. H.

McGirt filed a Complaint in this Court on November 3, 2015 [ECF No. 1], and amended it on May 3, 2016 [ECF No. 37]. Now, following two orders from this Court on motions to dismiss [ECF Nos. 30 & 64] and a stipulation by the parties (adopted by the Court) to the dismissal of all claims against Broward College and Dean Wood [ECF No. 74], four claims now remain: race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, against the City (Count I); procedural due process and equal protection violations against the City and Pustizzi (Count III); violations of Florida's Public Records Act, Fla. Stat. § 119.01 *et seq.*, against the City (Count V); and common law defamation against the City (Count VII). The City and Pustizzi have jointly moved for summary judgment on all claims. McGirt opposes the motion.

## II.   LEGAL STANDARD

Summary judgment, pursuant to Federal Rule of Civil Procedure 56(a), "is appropriate only if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Tolan v. Cotton*, 572 U.S. —, 134 S. Ct. 1861, 1866 (2014) (per curiam) (quoting Fed. R. Civ. P. 56(a)) (internal quotation marks omitted); *see also Alabama v. North Carolina*, 560 U.S. 330, 344 (2010). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no ***genuine*** issue of ***material*** fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

An issue is "genuine" when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the nonmoving party in light of his burden of proof. *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014). And a fact is "material" if, "under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357

5

F.3d 1256, 1259-60 (11th Cir. 2004) (citations and internal quotation marks omitted). "Where the material facts are undisputed and all that remains are questions of law, summary judgment may be granted." *Eternal Word Television Network, Inc. v. Sec'y of U.S. Dep't of Health & Human Servs.*, 818 F.3d 1122, 1138 (11th Cir. 2016).

The Court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *SEC v. Monterosso*, 756 F.3d 1326, 1333 (11th Cir. 2014). However, to prevail on a motion for summary judgment, "the nonmoving party must offer more than a mere scintilla of evidence for its position; indeed, the nonmoving party must make a showing sufficient to permit the jury to reasonably find on its behalf." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015).

### III.     DISCUSSION

#### A.     *Race Discrimination*

McGirt first contends that the City violated Title VII by terminating his employment because he is African-American. Title VII prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Where, as here, a plaintiff offers no direct evidence of discriminatory intent, he may prove discrimination through circumstantial evidence using the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[3] *See McCann v. Tillman*, 526 F.3d 1370, 1373

---

[3] McGirt argues that his discrimination claim should be analyzed as a mixed-motive claim under the Eleventh Circuit's recent decision in *Quigg v. Thomas County School District*, 814 F.3d 1227 (11th Cir. 2016), rather than a single-motive claim. But McGirt never pled a mixed-motive discrimination claim in any version of his Complaint, and his opposition to a motion for summary judgment is an inappropriate avenue to plead one now. *See Oliver v. Lhoist N. Am. of Ala., LLC*, No. 15-0689, 2016 WL 5253211, at *4 n.1 (N.D. Ala. Sept. 22, 2016) ("[The plaintiff] alleges that this is a mixed-motive claim in his Opposition to Defendant's Motion for Summary Judgment. However, [the plaintiff's] complaint claimed that bias against [the plaintiff] was the only reason for the employer's actions. There-fore, because the claims were pleaded as single-motive claims, they will be analyzed under single-motive standards." (citation omitted)); *see also Bush-Butler v. Mayor of Savannah*, No. 15-0212, 2016 WL 5724442, at *5 (S.D. Ga. Sept. 29, 2016) ("Even if Plaintiff had made such a claim [of mixed motive discrimination in her complaint], she

(11th Cir. 2008). Under the *McDonnell Douglas* framework, the plaintiff bears the initial burden of establishing a *prima facie* case for discrimination by showing that (1) he is a member of a protected class; (2) he was subjected to an adverse employment action; (3) his employer treated similarly situated employees outside the protected class more favorably; and (4) he was qualified to do the job. *McCann*, 526 F.3d at 1373. Once the plaintiff makes a *prima facie* case, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its employment action. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). If the employer satisfies this burden by articulating one or more reasons, then the presumption of discrimination is rebutted, and the burden of production shifts to the plaintiff to offer evidence that the alleged reason of the employer is a pretext for illegal discrimination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993). If the plaintiff succeeds in discrediting the employer's proffered reasons, the trier of fact may conclude that the employer intentionally discriminated. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000).

The City does not dispute that McGirt satisfies the first, second, and fourth elements of the *prima facie* case. But even assuming *arguendo* that McGirt has satisfied the third element—by showing that the City treated a similarly situated cadet outside his protected class more favorably—thereby establishing his entire *prima facie* case, he has failed to prove that the City's proffered reasons for terminating him were pretext for discrimination. *See Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1265 (11th Cir. 2010) ("It matters not whether [a plaintiff] has made out a prima facie case if []he cannot create a genuine issue of material fact as to whether [the defendant]'s proffered reasons for firing h[im] are pretext masking discrimination."). As laid out in Don-

---

would still not survive summary judgment. Plaintiff has provided no information whatsoever indicating that race or gender influenced her firing. She has not indicated that any of the individuals who made the decision to fire her considered race or gender. All Plaintiff has alleged is that she was terminated and is an African-American woman. This is simply not enough."). Therefore, the Court will analyze his claim as a single-motive claim—an analysis that still proceeds under the *McDonnell Douglas* framework. *See Quigg*, 814 F.3d at 1238 n.7.

mez's letter, *supra*, McGirt's poor judgment, improper conduct, and bullying behavior at the Academy resulted in the termination of his employment. *See* Defs.' Statement ¶ 33. The City also asserts that McGirt "was terminated solely because he displayed an on-going pattern of inappropriate behavior, poor decision marking, poor judgment, and a general unwillingness to adhere to the rules and the conduct standards that were expected of him as a law enforcement trainee." *Id.* ¶ 38. With that in mind, McGirt cannot establish pretext "unless it is shown **both** that the [City's] reason[s] [were] false, **and** that discrimination was the real reason" for the termination. *St. Mary's Honor Ctr.*, 509 U.S. at 515 (emphases in original); *see also Flowers v. Troup Cnty. Sch. Dist.*, 803 F.3d 1327, 1339 (11th Cir. 2015) ("Contradicting the [employer]'s asserted reason alone, though doing so is highly suggestive of pretext, no longer supports an inference of unlawful discrimination."); *Kragor v. Takeda Pharm. Am., Inc.*, 702 F.3d 1304, 1307 (11th Cir. 2012) ("[A] contradiction of the employer's proffered reason for the termination of an employee is sometimes enough, ***when combined with other evidence***, to allow a jury to find that the firing was the result of unlawful discrimination." (emphasis added)).

McGirt argues forcefully that the City's proffered reasons for terminating him are false, that they have shifted over time, and that they have conflicted with each other. Whether or not that characterization is accurate, it is not sufficient (without more) to establish pretext. *See Flowers*, 803 F.3d at 1338-39 (rejecting the plaintiff's argument that his employer "gave shifting and inconsistent reasons for firing him, and that these inconsistent reasons demonstrate pretext"); *Brooks v. County Comm'n*, 446 F.3d 1160, 1163 (11th Cir. 2006) ("A plaintiff must show not merely that the defendant's employment decisions were mistaken but that they were in fact motivated by race. . . . [A] plaintiff may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reasons, at least not where . . . the reason is one that might motivate a reasonable employer." (citation omitted)). A federal court is "not a 'super-

personnel department' assessing the prudence of routine employment decisions, 'no matter how medieval,' 'high-handed,' or 'mistaken'" they may be. *Flowers*, 803 F.3d at 1338 (quoting *Alvarez*, 610 F.3d at 1266); *see also Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999) ("[Courts] are not in the business of adjudging whether employment decisions are prudent or fair. Instead, [the] sole concern is whether unlawful discriminatory animus motivate[d] a challenged employment decision."); *Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187 (11th Cir. 1984) ("The employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason."). Thus, to show that a defendant's proffered reason is pretext, the plaintiff must "present ***concrete evidence*** in the form of ***specific facts*** . . . . Mere conclusory allegations and assertions will not suffice." *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990) (emphases added). McGirt, however, has provided no concrete evidence to support his assertion that race played any factor at all in the City's decision to terminate his employment, let alone that it was ***the*** factor motivating the decision. Without that evidence, the Court cannot find that the City's reasons are pretext for discrimination. McGirt's own conclusory assertion that the City discriminated against him because he was terminated and because he is African-American does not support a finding of pretext.

A plaintiff always bears the ultimate burden of proving discriminatory intent by a preponderance of the evidence. *Burdine*, 450 U.S. at 253. Even viewing the record in the light most favorable to McGirt, McGirt has proffered ***no*** evidence that the City's proffered legitimate, non-discriminatory reasons for his termination were pretext for discrimination.[4] The Court "cannot

---

[4] Alternatively, McGirt argues that he can withstand summary judgment because the City's shifting reasons for his termination presents "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." Pl.'s Opp'n at 12 (quoting *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011)). The Court disagrees; McGirt has not presented a "convincing mosaic" armed with only his self-serving attestation that he was treated differently because he is African-American. *See Turner v. Fla. Prepaid*

9

'ignore the failure to present evidence of discrimination,'" *Flowers*, 803 F.3d at 1339 (quoting *Hawkins v. Ceco Corp.*, 883 F.2d 977, 984 (11th Cir. 1989)), and, as a result, must conclude that summary judgment in the City's favor on this claim is warranted.[5]

### B. *Procedural Due Process*

Next, McGirt contends that the City and Pustizzi deprived him of a protected property interest in continued and future employment as a cadet and law enforcement officer with the City by terminating his employment based on race and failing to use constitutionally sufficient procedures in effecting that deprivation. *See* Am. Compl. ¶¶ 65-70. Where a State creates a property right in continued employment, it may not constitutionally authorize the deprivation of such an interest without "appropriate procedural safeguards." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985). A court analyzing a claimed violation of the requirements of procedural due process must ascertain whether the state created a property right or interest in continued employment and whether the defendant deprived that right or interest by a process that did not include appropriate procedural safeguards.

Assuming *arguendo* that McGirt did have a protected property interest in continued employment,[6] the Court finds that the City's procedures comport with due process. As the Supreme Court has explained:

> The essential requirements of due process . . . are notice and an opportunity to

---

*College Bd.*, 522 F. App'x 829, 833 (11th Cir. 2013) (per curiam) ("[W]e have never suggested that a plaintiff's generalized averment that her employer treated her differently than employees of a different race can, alone, create a 'convincing mosaic of circumstantial evidence' from which a jury could find intentional discrimination based on race" and even if "[defendant] singled [plaintiff] out and treated her poorly . . . [u]nless something links the actions to the employee's race . . . [that] does not permit a jury to infer intentional discrimination based on race.").

[5] Additionally, because discrimination claims brought under the Equal Protection Clause and Title VII "are subject to the same standards of proof and employ the same analytical framework," *Bryant v. Jones*, 575 F.3d 1281, 1296 n.20 (11th Cir. 2009), the above analysis applies and informs the Court's conclusion that both the City and Pustizzi are entitled to summary judgment on McGirt's equal protection claim, as well.

[6] The City argues that he did not because his employment was at-will. McGirt argues that he did because he was no longer a probationary employee at the time of his termination and because, at the very least, the City should have returned him to his PSA position rather than terminate his employment in full.

respond. The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement. The . . . public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story.

*Id.* at 546 (citation omitted). It is undisputed that on April 3, 2014, the officers investigating the complaints against McGirt (Kirkland and DePalma) interviewed McGirt, during which time they discussed with McGirt the allegations giving rise to his removal from the Academy.[7] It is undisputed that McGirt attended a pre-determination hearing, represented by counsel, where he presented argument and evidence in opposition to the City's proposal that his employment be terminated. It is undisputed that McGirt received the letter from Donmez outlining the reasons for his termination. And it is undisputed that McGirt attended post-termination arbitration, where he, again represented by counsel, testified, called witnesses, and cross-examined the City's witnesses. The Court

---

[7] The transcript provides, in relevant part:

[McGirt]: Well, I haven't really been officially told exactly why I been [] removed from the academy. . . . I just have, you know, hearsay from different people from the department and cadets as far as what they heard. . . .

[DePalma]: Well, I'll tell . . . I guess we'll go back to . . . we could at least go to the conversation that I had with you on Friday [] based on what was told to me. . . .

[McGirt]: Okay.

[DePalma]: —because it was recommended [] by . . . Dean Wood that you be removed from the class.

[McGirt]: Okay.

[DePalma]: And so . . . based on that decision to remove you, [] which is why [] we asked you to come back here to the police station and then not return to the Academy.

[McGirt]: Okay.

[DePalma]: . . . [B]ut what was [] brought to our attention was . . . your alleged provoking of [] the altercation that took place between you and Futch—

[McGirt]: Okay.

[DePalma]: . . . [A]nd then what was also brought to our attention was the [] sexual harassment allegation brought to our attention on behalf of Cadet Mejia and Cadet Lockett but more in particular it was Cadet Mejia that had an issue [] with the [] sexual harassment allegation . . .

[McGirt]: Okay.

[DePalma]: —and then [] after discussion with [] Assistant Dean [] Jeanine Czarnec and some of the consultation that she had with the [] instructors at the Academy . . . it was felt that your overall behavior and your demeanor [] wasn't appropriate at the Academy and so those are things that . . . were brought to my attention. . . . [B]asically, the . . . sexual harassment claim, . . . the incident between you and Futch and then your—your overall behavior as it relates to how you interacted with your [] other classmates, the instructors, and, I think that pretty much sums it up.

[ECF No. 83-21 at 102-04] (all errors [sic]).

11

finds that this process afforded to McGirt is sufficient. "To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee." *Id.*; *see also id.* at 547 (concluding that all the process due to the plaintiff was provided by a pre-termination opportunity to respond, coupled with post-termination administrative procedures as provided by state statute).

Additionally, notwithstanding whether McGirt **had** suffered a deprivation without adequate procedural safeguards, his claim fails because Florida law affords a plaintiff judicial review of employment termination by *certiorari* in Florida's circuit courts. Fla. R. App. P. 9.030(c)(2); *see also City of Deerfield Beach v. Vaillant*, 419 So. 2d 624, 626 (Fla. 1982) ("Where a party is entitled as a matter of right to seek review in the circuit court . . . , the circuit court **must** determine whether procedural due process is accorded, whether the essential requirements of the law have been observed, and whether the administrative findings and judgment are supported by competent substantial evidence." (emphasis added)); *Campbell v. Vetter*, 375 So. 2d 4 (Fla. 4th DCA 1979) (appeal from order of circuit court granting petition for writ of *certiorari* filed by plaintiff seeking review of an order upholding his discharge from employment as a city police officer). "Florida courts indeed do have the power to review employment termination cases," "the power to remedy deficiencies and to cure violations of due process," and "the authority to order . . . a new hearing conducted by a fair tribunal." *McKinney v. Pate*, 20 F.3d 1550, 1563 (11th Cir. 1994). Thus, because an adequate and available procedural remedy exists under Florida law, no claim for denial of procedural due process can exist. *See Cotton v. Jackson*, 216 F.3d 1328, 1331 (11th Cir. 2000) ("It is the state's failure to provide adequate procedures to remedy the otherwise procedurally flawed deprivation of a protected interest that gives rise to a federal procedural due process claim); *McKinney*, 20 F.3d at 1563 ("Even if [the plaintiff] suffered a procedural deprivation at the hands of a biased Board at his termination hearing, he has not suffered a violation of his procedural due

process rights unless and until the State of Florida refuses to provide adequate procedures to remedy the otherwise procedurally flawed deprivation of a protected interest that gives rise to a federal procedural due process claim."); *see also Horton v. Bd. of Cnty. Comm'rs*, 202 F.3d 1297, 1300 (11th Cir. 2000) ("The *McKinney* rule is not micro in its focus, but macro. It does not look to the actual involvement of state courts or whether they were asked to provide a remedy in the specific case now before the federal court. Instead, the *McKinney* rule looks to the existence of an opportunity—to whether the state courts, if asked, generally would provide an adequate remedy for the procedural deprivation the federal court plaintiff claims to have suffered. If state courts would, then there is no federal procedural due process violation regardless of whether the plaintiff has taken advantage of the state remedy or attempted to do so.").

McGirt argues that the availability of a State remedy in Florida courts does not operate to bar his claim because he did not receive pre-termination notice. This argument wholly misunderstands the governing legal framework. Whether McGirt received pre-termination notice is irrelevant, because "procedural due process violations ***do not even exist*** unless no adequate state remedies are available." *Cotton*, 216 F.3d at 1331 n.2 (emphasis added); *see also Duva v. Bd. of Regents*, 654 F. App'x 451, 455 (11th Cir. 2016) (per curiam) ("Even if we accept that [the plaintiff] has alleged sufficiently a <u>deprivation</u> of a due process right, a constitutional due process <u>violation</u> occurs only after the state refuses to provide a process adequate to remedy that procedural deprivation." (emphases in original)). Adequate state remedies under these circumstances ***are*** available. Consequently, no procedural due process violation exists here, and both the City and Pustizzi are entitled to summary judgment on this claim.

### C. *Florida Public Records Act*

McGirt alleges that the City violated Florida's Public Records Act by failing to provide disciplinary records pertaining to Nieves and audiotapes of witness statements taken as part of the

13

investigation into the complaints of McGirt's behavior at the Academy. Am. Compl. ¶ 40. To establish a claim for violation of the act, McGirt must show that the City "unlawfully refuse[d] to permit a public record to be inspected, examined, or copied." Fla. Stat. § 119.12(1).

On June 18, 2014, McGirt, through counsel, made a written request for inspection and copying of the following public records: (1) computer assisted dispatch records of McGirt and several other officers; (2) records of inquiries made on the National Crime Information Center (NCIC), Financial Crisis Inquiry Commission (FCIC), Florida Department of Highway Safety and Motor Vehicles (FDHSMV), and the Driver and Vehicle Information Database (DAVID) regarding two Florida license plates; (3) disciplinary records related to Lieutenant James McHugh; (4) disciplinary records related to Cadet Nieves; (5) records related to a traffic stop involving McHugh; and (6) audible dispatch records regarding McGirt. [ECF No. 83-32 at 3-4]. In a Declaration, Diane Minutoli, Public Records Specialist in the City of Coral Springs Clerk's Office, attests, *inter alia*, (1) that all records responsive to McGirt's counsel's June 18, 2014, request were made available for review on July 3, 2014; (2) that McGirt reviewed the records on July 28, 2014; (3) that McGirt's counsel sent a letter to the City stating that the City did not provide certain records for review; and (4) that City staff confirmed all records responsive to the June 18, 2014, request were sent to her and that she made available those records for McGirt or his counsel to review. *See* Minutoli Decl. ¶¶ 11-17 [ECF No. 83-32]. McGirt does not dispute Minutoli's assertions, but rather argues that the City "has continued to commit public records violations" "***during the pendency of this action***." Pl.'s Opp'n at 16 (emphasis in original). His arguments do not pertain to the June 18, 2014, records request, however (the basis for the Public Records Act claim); rather, they appear to be complaints relating to documents that McGirt believes should have been produced in discovery by the City but were not. In other words, McGirt is attempting, in his opposition to a motion for summary judgment, to couch allegations of a discovery violation as a new claim for

14

violations of the Public Records Act—based on actions by the City he has not previously pled in any version of his Complaint. If McGirt had issues with the City's discovery (or alleged lack thereof), the time to raise them has long since passed. If he believes the City committed other Public Records Act violations, he should have amended his Complaint to allege them. But he did not, and he cannot do so now.

Given that McGirt does not dispute the City's factual proffer that it complied with his counsel's June 18, 2014, public records request, there can be no genuine issue of material fact that the City did not violate the Public Records Act relating to that request. Accordingly, summary judgment on this claim is granted.

### D.   *Defamation*

Finally, McGirt's defamation claim arises from the allegation that the City prevented him from obtaining employment (for which he was qualified) at five different law enforcement agencies because the City informed those agencies that McGirt was "terminated due to serious misconduct related to work." Am. Compl. ¶¶ 95-97. "To state a claim for common law defamation, a plaintiff must [establish] that (1) the defendant published a false statement (2) about the plaintiff (3) to a third party and (4) [] the falsity of the statement caused injury to the plaintiff." *Turner v. Wells*, 198 F. Supp. 3d 1355, 1364 (S.D. Fla. 2016) (citation and internal quotation marks omitted), *appeal filed*, No. 16-15692 (11th Cir. Aug. 25, 2016); *see also Valencia v. Citibank Int'l*, 728 So. 2d 330 (Fla. 3d DCA 1999). However, in Florida, "[p]ublic officials who make statements within the scope of their duties are absolutely immune from suit for defamation." *Cassell v. India*, 964 So. 2d 190, 193 (Fla. 4th DCA 2007) (citation omitted); *see also Blake v. City of Port Saint Lucie*, 73 So. 3d 905 (Fla. 4th DCA 2011). "[T]he deciding factor in determining whether the privilege giving rise to absolute immunity applies is whether the communication is made within the course and scope of the official's employment." *Bates v. St. Lucie Cnty. Sheriff's Office*, 31 So. 3d 210, 213

(Fla. 4th DCA 2010).

It is undisputed that it is the City's practice to confirm (or disclaim) prior City employment, including date of hire, date of separation, and last job title, as well as the reason or reasons for separation, if requested. Defs.' Statement ¶ 42 (citing Pazdra Decl. ¶ 22 [ECF No. 83-30]). It is also undisputed that such information is provided by the City employee, executive, or official assigned to respond to the request as part of that employee's, executive's, or official's duties and responsibilities. *Id.* As such, assuming (as McGirt does) that an individual in the City's Human Resources department made this disclosure,[8] and because McGirt does not dispute that any disclosure of such information by City HR official would have been made in the course and scope of that HR official's employment, then the City is absolutely immune from liability for defamation arising from the alleged offending disclosures. Accordingly, the motion for summary judgment on this claim is granted.[9]

---

[8] McGirt either cannot or has not identified the individual who made the allegedly defamatory disclosures. The relevant portion of McGirt's deposition reads as follows:

Q. We know about the internal affairs file, and you're saying that there are statements in there and there's information which is false, correct?
A. Yes.
Q. Other than that Internal Affairs investigation, are you aware of any other materials prepared by the city or statements made by any city employee that you believe was false about you?
A. Without knowing what's in my file I don't think I can answer that question. But other than what I know is the IA investigation and attachments, yes, I believe a lot of it is untrue, it's a bunch of overexaggerations or inaccuracies there. My classification as far as the city violations that I violated, I would guess those are in my file, my termination letters after the many drafts of them, I'm sure those are in my file. So and also it was one incident where DJJ *[one of the institutions at which McGirt applied to work]*, the hiring agent was trying to con[ta]ct Coral Springs to get a[n] employment verification, and they were, someone from the city was refusing to give up information to verify my employment, so she was going back and forth with them regarding that. They didn't want to sign off on anything. And according to her I think they spoke negative of me, about me.
Q. This is someone from DJJ that told you this?
A. Yes.
Q. And . . . as you sit here today do you know who the city person was that wouldn't provide any information about you?
A. I'm sure someone from the city that works in the HR department.

Pl.'s Dep. [ECF No. 83-4] at 274:6-275:19.

[9] McGirt asserts in his opposition that "he should . . . be able to assert a defamation claim pursuant to the holding of *Buxton* [*v. City of Plant City*, 871 F.2d 1037 (11th Cir. 1989)]." Pl.'s Opp'n at 19. McGirt did not plead such a

**IV.     CONCLUSION**

Based on the foregoing, it is **ORDERED AND ADJUDGED** that the Defendants' Joint Motion for Summary Judgment [ECF No. 81] is **GRANTED**. Pursuant to Federal Rule of Civil Procedure 58, final judgment will be entered separately.

This action is **CLOSED** and all other pending motions are **DENIED AS MOOT**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 28th day of March, 2017.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE

---

defamation claim in the Amended Complaint and, as stated *supra*, the Court will not permit him to amend his complaint via an argument in opposition to a motion for summary judgment.